**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-01449-PAB

WILDERNESS WATCH, et al.

      Plaintiffs,

v.

BRIAN FEREBEE, in his official capacity as Regional Forester and
UNITED STATES FOREST SERVICE,

      Federal Defendants.

---

**FEDERAL DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND
MEMORANDUM IN SUPPORT THEREOF**

---

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Federal

Defendants hereby move this Court to dismiss Plaintiffs' Complaint in its entirety.  The

bases for this motion, as set forth in the accompanying memorandum, are that:  (1) due

to a change in circumstances, Plaintiffs' claims under the National Environmental Policy

Act ("NEPA"), 42 U.S.C. §§ 4321-4370(m), and Wilderness Act, 16 U.S.C. §§ 1131-

1136, are now moot; (2) no exception to mootness applies; and (3) any claims that

Plaintiffs may raise with regard to future conduct are not ripe for review.[1]

---

[1] In compliance with Local Civil Rule 7.1(a), the parties discussed and attempted to resolve the issues raised in this motion but were unable to do so.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## I.    INTRODUCTION

Plaintiffs brought this case on May 22, 2019, challenging the Regional Forester's (Defendant Brian Ferebee) May 7, 2019 authorization of limited use of chainsaws in the Weminuche and South San Juan Wildernesses ("Wildernesses").  Compl., ECF No. 1.  Plaintiffs sought to enjoin the Forest Service from acting on the Regional Forester's authorization.  *Id.* at 25.  On June 10, 2019, the Regional Forester withdrew that authorization, definitively precluding the Forest Service from acting on his prior authorization.  *See* ECF No. 17, Exhibit 1.  Because of that withdrawal, this case is now moot.  And no possible future claims are ripe.  Federal Defendants therefore move this Court to dismiss the Complaint for lack of subject matter jurisdiction.

## II.    FACTUAL BACKGROUND

This case concerns the Regional Forester's initial, now rescinded, decision to allow the limited use of chainsaws to clear trails in the Weminuche and South San Juan Wildernesses to address "extensive" trail blockages caused by beetlekill trees.  WW02733.  The main purpose of authorizing the limited use of chainsaws was to "reduce resource damage that occurs from hikers and horse users going around deadfall and leaning trees, which can have the effect of creating social trails, trampling vegetation and causing soil erosion."  *Id.*  Without the use of chainsaws, the Forest Service would have been unable to clear the extensive trail blockages in the compressed timeframe between when the snow melts in late spring or early summer

and Labor Day weekend−when hunting season begins and crowds are at their peak. WW02523, WW02732, WW02735.

Prior to the May 7 Memo authorizing limited chainsaw use in the Wildernesses (the "Authorization"), the Forest Service undertook a review to ensure that the Authorization complied with both the Wilderness Act and NEPA. *See* WW02699-731. The Forest Service determined the Authorization was permitted by the Wilderness Act because the limited use of chainsaws was necessary to meet the minimum requirements for the administration of the area. WW02705, WW02728. The Forest Service determined the Authorization complied with NEPA because it fell within a categorical exclusion for repair and maintenance of trails and that no extraordinary circumstances existed which would preclude use of the categorical exclusion. *See* 36 C.F.R. § 220.6(d)(4).

Plaintiffs filed this action shortly after the Forest Service issued the Authorization. Plaintiffs allege the Forest Service violated the Wilderness Act and NEPA. Compl. ¶¶ 83-104. Plaintiffs' Wilderness Act claim is premised on two assumptions: (1) that providing trail access runs contrary to the Wilderness Act's "mandate to preserve wilderness character" by removing impediments to trail access; and (2) that even if providing trail access is permissible under the Wilderness Act, the Forest Service's limited use of chainsaws is not necessary to ensure such access. Pls.' Mot. for Prelim. Inj. ("Pls.' Mot."), ECF No. 11, at 12, 17-20. However, protection of the wilderness character is the "main reason" the Forest Service prioritized clearing the trails. WW02733. By clearing trails, the Forest Service aimed to further the wilderness

character by preventing the creation of "social trails," trampling vegetation, and soil erosion.  *Id.*  After carefully considering several alternatives, the Forest Service determined that it was necessary to authorize the limited use of chainsaws to clear trails before peak visitor season.  WW02705, WW02732-34.

Ultimately, nature thwarted the Forest Sevice's plan to allow limited use of chainsaws to clear obstructed trails in the Wildernesses.  On May 31, the Forest Service delayed implementation of the May 7 Authorization because heavy snowpack made it "unlikely for work to begin as early as contemplated in the [May 7 Memo]."  WW02735. Following the May 31 Memo, the Forest Service received new reports from trail crews and scouts indicating that snowpack was 500-700 percent higher than normal and "that access into the backcountry to perform trail maintenance work will need to be delayed even further than initially forecasted . . . [because] [a]valanches have blocked many trails and those trails are unlikely to be accessible until late in the year."  ECF No. 17-1, at 1.

Based on this new information, the Forest Service determined it was "unlikely that [it] would realize any substantial benefit from the use of chainsaws to clear trail obstructions during the period authorized by [the May 31 Memo]."  *Id.*  Avalanches and heavy snowpack created significantly greater natural resource damage than was anticipated at the time of May 7 and May 31 Memos.  *Id.*  The Regional Forester

accordingly rescinded the May 7 and May 31 approvals for limited chainsaw use in the Wildernesses. *Id.* at 2.[2]

## III. ARGUMENT

Under Article III of the Constitution, "the exercise of judicial power depends upon the existence of a case or controversy." *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964). Here there is no Article III case or controversy, and thus no jurisdiction.

### A. Plaintiffs' Claims Must be Dismissed as Moot.

A federal court does not have jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citations and quotation marks omitted); *Aman v. Dillon Co., Inc.*, 645 F. App'x 719, 728 (10th Cir. 2016) ("Mootness is a jurisdictional issue."). A live controversy must persist throughout all stages of the litigation. *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1242 (10th Cir. 2011). In cases like this, the central question is "have circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief?" *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1122 (10th Cir. 2010) (quoting *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997)).

A plaintiff bears the burden of demonstrating that a case or controversy exists at all stages of the litigation. If an actual, or threatened injury from a challenged

---

[2] Trail clearing in the Wildernesses with non-motorized equipment is still permitted to the extent feasible under the conditions. *Id.* Plaintiffs do not challenge the Forest Service's use of non-motorized equipment to clear trails in the Wildernesses. *See* Pls.' Mot., at 4.

government action no longer exists, or a change in circumstances deprives a court of the ability to provide any meaningful or effective relief for the alleged violation, the matter is moot and must be dismissed for lack of jurisdiction.  *See Mills v. Green*, 159 U.S. 651, 653 (1895); *Colo. Off Highway. Vehicle Coal. v. U.S. Forest Serv.*, 357 F.3d 1130, 1133-35 (10th Cir. 2004); FED. R. CIV. P. 12(h)(3).

In their Complaint, Plaintiffs allege that the May 7 Authorization violates the Wilderness Act because it permits the use of motorized equipment (chainsaws) in the Wildernesses.  Compl. ¶¶ 84-89.  They also allege that in authorizing the limited use of chainsaws to clear trail obstructions, the Forest Service failed to conduct a proper environmental review in violation of NEPA.  *Id.* at ¶¶ 91-104.  Each of these claims is moot because the Forest Service rescinded the challenged authorization for the limited use of chainsaws in the Wildernesses on June 10.  *See Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011) (environmental claims moot when agency's subsequent action superseded the Record of Decision).  The conduct that Plaintiffs challenge—chainsaw use in the Wildernesses to clear trails as authorized by the May 7 Memo—will not occur because it is no longer authorized to occur.  ECF No. 17-1.

Given that the challenged action has been withdrawn and there is no specific plan to reinstate it, consideration of the claims on the merits would require the Court "to declare principles or rules of law which cannot affect the matter in issue in the case before it."  *Church of Scientology*, 506 U.S. at 12 (citations and quotation marks

omitted).  And to do so would be improper as Article III courts lack the authority to issue advisory opinions.  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

At this juncture, the Court is also unable to provide Plaintiffs with any meaningful relief from the potential injuries they allege.  Plaintiffs allege the chainsaw Authorization will cause injury to "their current and future use and enjoyment of the [Wildernesses]."  Compl. ¶¶ 8, 9.  But such injury can only occur if the Forest Service authorizes chainsaw use in the Wildernesses.  Because the Forest Service has rescinded the Authorization, no threat of injury to Plaintiffs' use and enjoyment of the Wildernesses presently exists.  The Court can provide no meaningful relief to an actual or imminent injury.  *See Mills*, 159 U.S. at 653.

Because this case is moot, the Court cannot exercise subject matter jurisdiction over this matter.  The Court should dismiss the Complaint.

**B.  Neither the "Voluntary Cessation" Nor the "Capable of Repetition Yet Evading Review" Exceptions Apply.**

Neither the "voluntary cessation" nor the "capable of repetition yet evading review" exceptions to mootness apply to this case.

1.   The Voluntary Cessation Exception Does Not Apply Here.

The voluntary cessation exception "exists to counteract the potential for a defendant to cease illegal action long enough to render a lawsuit moot and then resume the illegal conduct."  *Wyo. Timber Indus. Ass'n v. U.S. Forest Serv.*, 6 F. App'x 733, 738 (10th Cir. 2001).  "Such situations arise, for example, when a plaintiff has been subjected to multiple instances of unlawful action in the past, and can demonstrate a

likelihood of future repetition." *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1183 (10th Cir. 2012) (citation omitted).

A request for prospective relief is mooted by a defendant's voluntary conduct if "it is 'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 190 (2002)); *see, e.g.*, *Wyo. Timber Indus. Ass'n*, 6 F. App'x at 738 (voluntary cessation exception not applicable "since the expired interim rule cannot be easily repeated."); *Camfield v. City of Okla. City*, 248 F.3d 1214, 1223-24 (10th Cir. 2001) (voluntary cessation exception to mootness does not apply "where there is no evidence in the record to indicate that the legislature intends to reenact the prior version of the disputed statute"); *Hayes v. Osage Minerals Council*, 699 F. App'x 799, 804 (10th Cir. 2017) ("The record reveals no reasonable expectation that the BIA will rely on its prior NEPA analyses for future leasing or drilling decisions . . . [a]ccordingly, the voluntary cessation doctrine does not apply."). "One factor courts have found influential in this analysis is the formal withdrawal or supersession of an administrative action . . . as compared to a 'mere informal promise or assurance on the part of the governmental defendants that the challenged practice will cease.'" *Front Range Equine Rescue v. Bureau of Land Mgmt.*, No. 16-CV-0969-WJM, 2017 WL 5885314, at *9 (D. Colo. Nov. 29, 2017) (citing and quoting *Silvery Minnow*, 601 F.3d at 1111-13, 1118). In assessing whether subsequent events have mooted an appeal and thus deprived the courts of jurisdiction, "[t]he crucial

question is whether granting a present determination of the issues offered will have some effect in the real world." *Silvery Minnow*, 601 F.3d at 1110 (quotation omitted).

It is "absolutely clear" that the Forest Service will not authorize the use of chainsaws in the Wildernesses as set forth in the May 7 memo because the physical condition of the Wildernesses has made it infeasible. *See* ECF No. 17-1, at 1 ("Avalanches have blocked many trails and those trails are unlikely to be accessible until late in the year . . . therefore it is [] unlikely that we would realize any substantial benefit from the use of chainsaws to clear trail obstructions"). And there is no reason to assume that the Forest Service will reissue the same or a substantially similar authorization in the future. *See Hayes*, 699 F. App'x at 804 (Withdrawal or alteration of administrative policies can satisfy the voluntary cessation test). Were Plaintiffs to succeed on the merits of their claims, a judicial decision will not have "some effect in the real world." *Silvery Minnow*, 601 F.3d at 1110.

2.  The Capable of Repetition Yet Evading Review Mootness Exception Does Not Apply Here.

The "capable of repetition yet evading review" exception "is only to be used in exceptional situations," such as "when: (1) the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party . . . [will] be subjected to the same action again." *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008) (quotations omitted). The party asserting this exception bears the burden of establishing both prongs. *Jordan v. Sosa*, 654 F.3d 1012, 1035 (10th Cir. 2011).

As to the first element, "[t]he party seeking to avoid mootness must proffer evidence from which [the Court] might infer that this ... [governmental] behavior is *necessarily* of short duration." *Wyoming v. U.S. Dep't of the Interior*, 674 F.3d 1220, 1229 (10th Cir. 2012) (quotation omitted) (emphasis in original).  "[T]he inquiry should turn on whether something inherent exists in the nature or structure of the governmental action that makes it necessarily of short duration." *Id.*  Here, there is nothing inherent in the nature or structure of the May 7 Authorization that makes it necessarily of short duration.  In fact, a future authorization, if any, could be of long duration.  *Cf. United States v. Seminole Nation of Okla.*, 321 F.3d, 939, 943 (10th Cir. 2002) (temporary regulatory orders that by statute cease to be in effect no later than ninety days after issuance).  Thus, Plaintiffs cannot establish that future authorizations would evade review.

As to the second element, "[t]here is no bright line test for determining whether the 'same' statutory challenge would be present in another suit." *Id.*  "A challenge to an interim rule may proceed if the new rule reproduces the old rule 'word-for-word,' but fails as moot if there are any relevant changes." *Id.* (quotations and citations omitted).  The May 7 Authorization in this case arose from the confluence of "extensive" beetlekill and widespread trail blockages in these two particular Wildernesses.  ECF No. 17-1, at 1; WW02733.  Any future authorization would depend upon future conditions, which cannot be fully predicted.  Moreover any future authorization would depend upon the Forest Service deciding to issue the same authorization, which it may not do.  *See, e.g.*, *Hayes*, 699 F. App'x at 804 ("The record reveals no reasonable expectation that the BIA

will rely on its prior NEPA analyses").  For these reasons, no exception to mootness

applies.

### C. To the Extent that Plaintiffs Claims Are Based on Potential Future Conduct, Such Claims are Not Ripe.

Plaintiffs might argue that this case is not moot because the Forest Service may,

at some future time, decide to re-issue an authorization for limited chainsaw use.  But

any such claim is unripe at this point in time.

The ripeness doctrine, like the mootness doctrine, is closely related to standing

because it "originate[s] from the same Article III limitation."  *Susan B. Anthony List v.*

*Driehaus*, 573 U.S. 149, 157 n.5 (2014) (quotation marks omitted); *Initiative and*

*Referendum Inst. v. Walker*, 450 F.3d 1082, 1097 (10th Cir. 2006).  "When determining

standing, a court asks whether these persons are the proper parties to bring the suit . . .

[w]hen determining ripeness, a court asks whether this is the correct time for the

complainant to bring the action."  *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1157

(10th Cir. 2013) (quoting *Wilderness Soc'y v. Alcock*, 83 F.3d 386, 390 (11th Cir. 1996)

(citation omitted).  The basic rationale of the ripeness requirement is "to prevent the

courts, through avoidance of premature adjudication, from entangling themselves in

abstract disagreements[.]"  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803,

808 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).

The Constitution mandates that prior to the exercise of jurisdiction there exist a

constitutional "case or controversy" and that the issues presented are "a real,

substantial controversy between parties having adverse legal interests, a dispute

definite and concrete, not hypothetical or abstract."  *Babbitt v. United Farm Workers*

*Nat'l Union*, 442 U.S. 289, 297-98 (1979) (citation omitted).  "A claim is not ripe for

adjudication if it rests upon 'contingent future events that may not occur as anticipated,

or indeed may not occur at all.'"  *Texas v. United States*, 523 U.S. 296, 300 (1998)

(citations and quotation marks omitted); *Utah v. U.S. Dep't of the Interior*, 535 F.3d

1184, 1196 (10th Cir. 2008).  This is because, "if the contingent events do not occur, the

plaintiff likely will not have suffered an injury that is concrete and particularized enough

to establish the first element of standing."  *Roe v. Aegis Wholesale Corp.*, No. 13–CV–

03040–KMT, 2014 WL 4746721, at *7 (D. Colo. Sept. 24, 2014) (quoting *Bova v. City of

Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009)).

Here, any potential activities that Plaintiffs may complain of have not occurred

and are not planned.  Therefore there is no injury to Plaintiffs, much less an injury that is

traceable to the Forest Service or redressable by a favorable decision.  The Forest

Service does not presently have any plan to re-issue the May 7 Authorization, either in

the same or different form.  Even if it were someday to develop a similar plan, the

bases, terms, and limits of a future authorization might differ significantly from the May 7

Authorization at issue in this case.

Any future authorization would be based on future conditions that make chainsaw

use necessary.  These future circumstances may be entirely different from those in this

case. *Cf. Wyo. Timber Indus. Ass'n*, 6 F. App'x at 739 ("A challenge to an interim rule

may proceed if the new rule reproduces the old rule word-for-word . . . but fails as moot

if there are any relevant changes." (quotation marks and citations omitted)); *The

Wilderness Soc'y v. Kane Cty., Utah*, 632 F.3d 1162, 1175-76 (10th Cir. 2011) ("[T]he

- 12 -

evidence before us suggests only that the County *might* enact a *different* ordinance in the future . . . And there can be little doubt that such a different ordinance, if it is ever enacted and then challenged, will present different legal and factual questions for decision." (emphasis in original)).  Thus, even if this Court rescinded the May 7 Authorization, that analysis and decision would not encompass future authorizations, which may arise under different conditions.  *CF. Hale v. Ashcroft*, 683 F. Supp. 2d 1189, 1198 (D. Colo. 2009) ("Defendants persuasively counter that because any new classification of Plaintiff . . . would be highly fact specific, the voluntary cessation doctrine is inapplicable.  This is true because review of future instances of wrongful behavior may be quite different from the complained-of example that already has ceased." (internal quotations omitted)).  For any future authorization, a new environmental review, and the final decision based on that new environmental analysis, would be subject to a new challenge and judicial review.

Any claims that Plaintiffs may have are contingent upon events that have not occurred.  *See Palma*, 707 F.3d at 1160-61 (holding that claims which "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all" contain "simply too much uncertainty as to when and what type" of harm (citation omitted)).  Any claims that Plaintiffs may have with respect to future Forest Service's plans to authorize chainsaw use to clear trail obstructions in the Wildernesses are not ripe for review and fall outside the Court's subject matter jurisdiction.  Accordingly, Plaintiffs' Complaint should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss

the Complaint.

Dated:  July 23, 2019                              Respectfully submitted,

                                                   LAWRENCE VANDYKE
                                                   Deputy Assistant Attorney General
                                                   Environment & Natural Resources Division

                                                   */s/ Dustin J. Weisman*
                                                   SEAN C. DUFFY
                                                   DUSTIN J. WEISMAN
                                                   Trial Attorneys
                                                   U.S. Department of Justice
                                                   Environment & Natural Resources Division
                                                   Natural Resources Section
                                                   601 D Street NW
                                                   Washington, DC 20004
                                                   Tel: (202) 305-0445 (Duffy)
                                                   Tel: (202) 305-0432 (Weisman)
                                                   Fax: (202) 305-0506
                                                   sean.c.duffy@usdoj.gov
                                                   dustin.weisman@usdoj.gov

                                                   *Attorneys for Federal Defendants*

Of Counsel:
        KENNETH D. PAUR
        Deputy Regional Counsel
        Office of the General Counsel
        U.S. Department of Agriculture