IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-01449-PAB

WILDERNESS WATCH,
SAN JUAN CITIZENS ALLIANCE, and
GREAT OLD BROADS FOR WILDERNESS,

      Plaintiffs,

v.

BRIAN FEREBEE, in his official capacity as Regional Forester, and
UNITED STATES FOREST SERVICE, a Federal Agency within the U.S. Department of
Agriculture,

      Defendants.

_____

**ORDER**
_____

This matter is before the Court on the Federal Defendants' Motion to Dismiss the

Complaint and Memorandum in Support Thereof [Docket No. 20] and Plaintiffs' Motion

for Leave to Conduct Limited Discovery Regarding Administrative Record and

Jurisdiction [Docket No. 22].

## I.  BACKGROUND

The Wilderness Act, 16 U.S.C. § 1131 *et seq*., governs wilderness areas

included in the National Wilderness Preservation System.[1]  The Wilderness Act

_____

[1] The Wilderness Act defines a "wilderness" as "an area where the earth and its
community of life are untrammeled by man, where man himself is a visitor who does not
remain," "in contrast with those areas where man and his own works dominate the
landscape."  16 U.S.C. § 1131(c).

prohibits the use of "motorized equipment" within a wilderness "except as necessary to meet minimum requirements for the administration of the area." 11 U.S.C. § 1133(c).

Defendant United States Forest Service (the "Forest Service") is a federal agency within the United States Department of Agriculture. Docket No. 1 at 6, ¶ 11.[2] Among other things, the Forest Service is responsible for administering wilderness areas within national forests. *Id*. at 6-7, ¶¶ 11, 13; *see also* 16 U.S.C. § 1131(b) (indicating that areas included in the National Wilderness Preservation System "shall continue to be managed by the Department and agency having jurisdiction thereover"). Two such wildernesses are the Weminuche Wilderness and the South San Juan Wildernesses (together, the "Wilderness Areas"), which are located in the San Juan National Forest and Rio Grande National Forest in southern Colorado. *Id*. at 10-11, ¶¶ 24-26. The Wilderness Areas are within the Forest Service's Rocky Mountain Region. *Id*. at 11, ¶ 26. Defendant Brian Ferebee ("Ferebee") is the Regional Forester of the Rocky Mountain Region. *Id*. at 5, ¶ 10.

On May 7, 2019, Ferebee issued a memorandum (the "May 7 memo") to the Forest Supervisors for the San Juan National Forest and the Rio Grande National Forest. *Id*. at 13, ¶ 35; *see also* Docket No. 11-1. In the May 7 memo, Ferebee approved the use of chainsaws in the Wilderness Areas during the 2019 field season "for the purpose of clearing trail obstructions[] and creating safe refuges for administrative use and trail users" (the "chainsaw authorization"). Docket No. 11-1 at

---

[2] Facts drawn from plaintiffs' complaint are provided for background purposes only.

2

1.  The chainsaw authorization allowed the Forest Supervisors to use chainsaws for "no more than [six] weeks between June 1 and August 17." *Id*. Ferebee explained that the chainsaw authorization was justified in order to "clear beetle-killed trees that are obstructing trail access to the wilderness." *Id*. at 2. Ferebee further explained that "[t]he magnitude of obstructed trails across [the Wilderness Areas] and the potential resource damage that will occur . . . warrants the rare and limited exception to allow chainsaw use." *Id*. Ferebee also noted that "the 2019 field season is likely to be shorter than recent years due to the extensive snowpack that has built up during the past winter." *Id*. The May 7 memo also directed the Forest Supervisors to produce a report with certain data that would "help determine if any future chainsaw allowances are justified and needed to administer wilderness." *Id*. at 3.

Plaintiffs are three non-profit organizations whose missions include "the preservation and proper stewardship of lands . . . in the National Wilderness Preservation System" (Wilderness Watch), "monitoring and scrutinizing National Forest management" (San Juan Citizens Alliance), and "inspir[ing] activism to preserve and protect wilderness and wild lands" (Great Old Broads for Wilderness). Docket No. 1 at 3-4, ¶¶ 3-5. On May 22, 2019, plaintiffs filed this lawsuit, challenging the chainsaw authorization promulgated by the May 7 memo. *See generally id*. Plaintiffs allege that their members' use and enjoyment of the Wilderness Areas will be "degraded" by the chainsaw authorization. *Id*. at 5, ¶ 6. Plaintiffs contend that the decision violates the Wilderness Act, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4331 *et seq*., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. *Id*. at 19-

24, ¶¶ 83-104.  Plaintiffs request as relief that the Court (1) declare that the chainsaw authorization violates the Wilderness Act, NEPA, and APA, (2) void the chainsaw authorization, (3) enjoin defendants from acting on both the chainsaw authorization and "any future motorized use proposal in designated wilderness," and (4) remand the chainsaw authorization to defendants.  *Id*. at 24-25.

On May 31, 2019, Ferebee issued another memorandum (the "May 31 memo"). R. at 2735.[3]  In the May 31 memo, Ferebee amended the chainsaw authorization because "[d]ue to heavy snowpack, it [would be] unlikely for work to begin as early as contemplated in" the May 7 memo.  *Id*.  The May 31 memo made the chainsaw authorization effective July 8, 2019.  *Id*.

On June 4, 2019, plaintiffs moved for a preliminary injunction.  Docket No. 11. However, on June 14, 2019, plaintiffs withdrew the motion.  Docket No. 17 at 2.  The parties explained that Ferebee, in a memorandum dated June 10, 2019 (the "June 10 memo"), rescinded the chainsaw authorization.  *See* Docket No. 17-1.  In the June 10 memo, Ferebee explained that "[r]eports by trail crews and scouts over the past week indicate that . . . trail maintenance work will need to be delayed even further than initially forecasted" because "[a]valanches and heavy snowpack have created changed conditions" in the Wilderness Areas.  *Id*. at 1.  Thus, Ferebee concluded that it was "unlikely that [the Forest Service] would realize any substantial benefit from the use of

---

[3] "R. at __" refers to the Administrative Record filed by defendants.  *See* Docket No. 15 (notice of lodging administrative record).

chainsaws to clear trail obstructions." *Id*. at 1. The June 10 memo directs the Forest Supervisors to proceed with certain data collection efforts outlined in the May 7 memo.

On July 23, 2019, defendants filed a motion to dismiss for lack of jurisdiction. Docket No. 20. Defendants argue that plaintiffs' claims for relief are moot as a result of the June 10 memo and that any claims regarding potential future conduct are not ripe for review; thus, the Court does not have jurisdiction to hear the case. *Id*. at 1. In addition to their response, plaintiffs filed a motion for leave to conduct limited discovery. Docket No. 22. Plaintiffs argue that limited discovery is necessary in order to "establish a complete record concerning the facts that [defendants] allege[] to support [the] motion to dismiss." *Id*. at 2.

## II. LEGAL STANDARD

A motion under Fed. R. Civ. P. 12(b)(1) is a request for the Court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiff bears the burden of establishing that the Court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). When the Court lacks subject matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1). *See Jackson v. City and Cty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556 at *1 (D. Colo. Sept. 24, 2012).

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter

jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). The court may review materials outside the pleadings without converting the Rule 12(b)(1) motion to dismiss into a motion for summary judgment. *Davis ex rel. Davis v. U.S.*, 343 F.3d 1282, 1296 (10th Cir. 2003).

## III.  ANALYSIS

Neither NEPA nor the Wilderness Act provides for a private right of action. *Colo. Farm Bureau Fed. v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000); *Wyoming v. U.S. Dep't of Agric.*, 661 F.3d 1209, 1227 (10th Cir. 2011). Thus, the Court construes plaintiffs' challenges to the chainsaw authorization as challenging a "final agency action" under the APA, 5 U.S.C. § 704. *See id.*; *Dine Citizens Against Ruining Our Env't v. Klein*, 676 F. Supp. 2d 1198, 1205 (D. Colo. 2009). As relevant here, the APA grants the Court jurisdiction to review final agency actions. *Farrell-Cooper Mining Co. v. U.S. Dep't of Interior*, 864 F.3d 1105, 1110 (10th Cir. 2017).

Defendants move to dismiss the complaint pursuant to Rule 12(b)(1) on the grounds that plaintiffs' claims for relief are moot because the chainsaw authorization has been withdrawn, and that any claims in the complaint based on a future proposal to authorize chainsaw use are not ripe. Docket No. 20.

### A.  Mootness

"Under Article III of the Constitution [federal courts] may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988); *see also Wiley v.*

*Nat'l Collegiate Athletic Ass'n*, 612 F.2d 473, 475 (10th Cir. 1979) (noting that mootness

"has its constitutional origin in the 'case or controversy' limitation of Article III").  Thus,

"mootness is a threshold issue" that implicates the Court's subject-matter jurisdiction.

*Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005).  In the

mootness inquiry, "[t]he crucial question is whether granting a present determination of

the issues offered will have some effect in the real world."  *Citizens for Responsible*

*Government State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir.

2000) (internal quotations and alterations omitted).  It is the plaintiff's burden to

establish that the claims are not moot.  *Lujan v. Defenders of* Wildlife, 504 U.S. 555,

561 (1992) (noting that the party invoking federal jurisdiction bears the burden of

establishing standing).

Defendants' argument is straightforward: because the June 10 memo rescinded

the chainsaw authorization, no chainsaw use as outlined in the May 7 memo will occur

in the Wilderness Areas.  Docket No. 20 at 6.  Thus, plaintiffs' claims, which seek to

prevent defendants from implementing the chainsaw authorization, are moot.  *Id*.

Plaintiffs do not seem to argue that the chainsaw authorization remains operative.

Rather, in response, plaintiffs contend that their claims fit into one of two exceptions to

mootness: the voluntary cessation exception and the capable of repetition yet evading

review exception.  Docket No. 21 at 12-15.[4]  Neither exception applies.

---

[4] Plaintiffs also suggest that the Court could still make findings of fact and law
based on defendants' procedural compliance with NEPA and the APA in reaching the
chainsaw decision, even if it is no longer in effect.  Docket No. 21 at 8-9.  That is not
the case.  *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096,
1113 (10th Cir. 2010) (holding plaintiffs' claims moot because a court is not "situated to

### 1. Voluntary Cessation

"[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Defendant must meet a "heavy burden," *see id.*, of showing that (1) it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" and (2) "[i]nterim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Equal Employment Opportunity Commn. v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1173-74 (10th Cir. 2017) (quotation marks omitted); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010) (noting that, in practice, "*Laidlaw*'s heavy burden frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case").[5] "[T]he withdrawal or alteration of administrative policies can moot an attack on those policies." *Id.* at 1117 (citing *Bahnmiller v. Derwinski*, 923 F.2d 1085, 1089 (4th Cir. 1991)) (internal alterations and quotations omitted).

One factor in determining whether the challenged action could not be expected to recur is whether the action has been formally withdrawn or whether defendants have issued a "mere informal promise or assurance . . . that the challenged practice will

---

cure any purported procedural irregularities" in promulgating regulations where the regulations in question "no longer are operational").

[5] In at least two circuits, government actors enjoy a "rebuttable presumption" that a voluntarily ceased behavior will not recur. *See Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006); *Nat'l Assn. of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1310 (11th Cir. 2011).

cease." *Id*. at 1118. Defendants point to the June 10 memo as evidence that defendants have formally withdrawn the chainsaw authorization. Docket No. 20 at 8-9. In the June 10 memo, Ferebee states that, because it is "unlikely that [Forest Service personnel] would realize any substantial benefits from the use of chainsaws to clear trail obstructions during the period authorized by" the May 7 memo, he is "rescinding the approval to use chainsaws that was conveyed in" the May 7 memo. *See* Docket No. 17-1 at 1. The Court is satisfied that this operates as a formal withdrawal – not, as plaintiffs contend, an "informal promise" of cessation – of the chainsaw authorization as promulgated in the May 7 memo.

In response, plaintiffs argue that the record indicates that defendants still plan to take action on "the same proposal [p]laintiffs challenged," suggesting that defendants' withdrawal of the chainsaw authorization was done in order to render this case moot and then resume the illegal conduct. Docket No. 21 at 13. The Court sees two problems with this argument. First, plaintiffs define the "proposal" imprecisely. *See Front Range Equine Rescue v. Bureau of Land Mgmt.*, No. 16-cv-00969-WJM, 2017 WL 5885314, at *9 (D. Colo. Nov. 29, 2017) (noting that, in the voluntary mootness inquiry, the analysis depends on what is construed as the "challenged conduct"). The complaint challenges the chainsaw authorization as set out in the May 7 memo only. *See, e.g.*, Docket No. 1 at 2 (arguing that the chainsaw authorization "must be set aside and its implementation enjoined"). That chainsaw authorization has been withdrawn. Now, however, plaintiffs claim to be challenging "a broader reoccurring proposal to use chainsaws regionally on wilderness trails." *See* Docket No. 21 at 2 (internal quotations

9

omitted).[6]  If the Court construed plaintiffs' complaint as attacking any future authorization for the use of chainsaws, plaintiffs run into an insurmountable ripeness problem – discussed in more detail below – because there would be no "final agency action" within the meaning of the APA.  *See Front Range Equine*, 2017 WL 5885314, at *9 (noting that a broad construction of the term "challenged conduct" implicates the final agency action requirement).[7]  The Court agrees with defendants that there is no evidence that future chainsaw use is likely to be materially similar to the chainsaw authorization.  *See* Docket No. 27 at 6 (noting the "unique purpose, location, extent, timing, and constraints" that led to the May 7 memo and chainsaw decision).[8]  Second,

---

[6] Plaintiffs offer an entirely different theory in the reply brief on their motion for jurisdictional discovery, claiming that they are challenging "three agency decisions" – the chainsaw authorization, the delay of the chainsaw authorization in the May 31 memo, and the rescinding of the chainsaw authorization in the June 10 memo.  Docket No. 29 at 4.  The Court notes that plaintiffs have not moved to amend their complaint to reflect either the "broader reoccurring proposal" or "three agency decisions" theory of the case.

[7] Plaintiffs point out that the May 7 memo has not been withdrawn in total because the June 10 memo directs the Forest Supervisors to continue to collect data on the use of motorized and non-motorized equipment in trail-clearing operations.  Docket No. 21 at 13.  The Court is not persuaded that such data-collection efforts, which are directed at informing a *future* agency action, are a final agency action that plaintiffs may challenge under the APA.

[8] Plaintiffs cite *Sherwood v. Tenn. Valley Auth.*, 842 F.3d 400 (6th Cir. 2016), for the proposition that the voluntary cessation exception applies "where the record show[s] challenged conduct is likely to recur . . . and [d]efendant would not commit to NEPA review of future conduct."  Docket No. 21 at 11.  *Sherwood* is not on point.  In *Sherwood*, the Sixth Circuit held that an agency action was not moot because the agency failed to show that the rule had no "demonstrable continuing effect" and that the agency had reverted back to prior practices.  842 F.3d at 405.  Here, however, there is no evidence in the record that the chainsaw authorization has any "demonstrable continuing effect" or that defendants did not revert back to the prior practice of not using chainsaws in the Wilderness Areas.

no evidence supports plaintiffs' assertion that Ferebee issued the June 10 memo merely to defeat judicial review. *See Rio Grande*, 601 F.3d at 1117 (noting that the absence of evidence that an intervening agency action was undertaken "merely to defeat the district court's jurisdiction weakens the implication that [the agency] manipulated the system"). Instead, as defendants point out, the May 31 and June 10 memos make clear that rescinding the chainsaw authorization was a result of changed conditions. *See* R. at 2735 (noting the delay in starting work caused by heavy snowpack); Docket No. 17-1 at 1 (noting that "[a]valanches and heavy snowpack have created changed conditions" since the May 7 memo). The Court thus concludes that defendants have satisfied the first prong of the voluntary cessation test.

As to the second prong of the voluntary cessation test, the Court has little difficulty concluding that the effects of the alleged violation have been "completely and irrevocably eradicated." *CollegeAmerica Denver, Inc.*, 869 F.3d at 1174. No chainsaws were used to clear trails in the Wilderness Areas; plaintiffs suffered no harm. Plaintiffs do not explain what, if any, effects of the chainsaw authorization linger on and cause them future harm. Thus, the Court concludes that defendants have met their burden to show that the voluntary mootness exception does not apply to this case.

### 2. *Capable of Repetition Yet Evading Review*

An otherwise moot claim is "capable of repetition, yet evading review" if "(1) the duration of the challenged action [is] too short to be fully litigated prior to its cessation or expiration; and (2) there [is] a reasonable expectation that the same complaining party will be subjected to the same action again." *Wyoming v. U.S. Dep't of Interior*,

674 F.3d 1220, 1229 (10th Cir. 2012). This doctrine is "narrow," *Jordan v. Sosa*, 654 F.3d 1012, 1034-35 (10th Cir. 2011), and applies "only in exceptional situations." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016). The inquiry turns on "whether something inherent exists in the nature or structure of the governmental action that makes it necessarily of short duration." *Wyoming*, 674 F.3d at 1229. Unlike the voluntary mootness exception, the plaintiff has the burden of showing that this exception applies. *Id*.

Plaintiffs argue that the capable of repetition yet evading review exception applies to this case because (1) defendants' project window is less than three months, which is too short to fully litigate plaintiffs' claims and (2) the "same action" is likely to recur. Docket No. 21 at 14-15. The Court disagrees. First, the Court is not persuaded that there is anything "inherent" in the nature of the promulgation of the chainsaw authorization that, should it recur in the future, would be of short duration. Plaintiffs suggest that a future chainsaw authorization can only be authorized through a "minimum requirement decision guide" for which approval takes about three weeks. *See id*. at 5 n.7. However, this speculative assertion does not persuade the Court that future chainsaw authorization must be promulgated through a procedure that is inherently of short duration. *See Front Range Equine Rescue v. Vilsack*, 78 F.3d 565 (10th Cir. 2015) (holding that speculation cannot substitute for actual evidence from which the court might infer that governmental behavior is necessarily of short duration); *cf. United States v. Seminole Nation*, 321 F.3d 939, 943 (10th Cir. 2002) (applying the "capable of repetition, yet evading review" exception to review challenges to temporary

regulatory orders that were necessarily of short duration because, by statute, they would cease to be in effect no later than ninety days after their issuance).  Plaintiffs have failed to show that there is anything about the chainsaw authorization that is "by nature, so ephemeral as to elude the processes of judicial review."  *See Beattie v. United States*, 949 F.2d 1092, 1094 n. 2 (10th Cir. 1991).

Second, even assuming *arguendo* that any future chainsaw authorization is necessarily of short duration, there is no reason to believe that plaintiffs could not obtain a preliminary injunction against chainsaw use before the authorization expired. *See Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 485 (8th Cir. 1998) (declining to apply exception where "judicial processes such as preliminary injunctions" would "be available to [plaintiff] if the need arises in the future"); *see also* Docket No. 16 (setting hearing on preliminary injunction for June 25, 2019).

Finally, the Court is not persuaded that the chainsaw authorization is likely to recur in the same form in the future.  The May 7 memo and June 10 memo indicate that the chainsaw authorization was a result of unique conditions on the ground in the Wilderness Areas.  *See* Docket No. 11-1 at 2 (noting that the chainsaw authorization is to "clear beetle-killed trees that are obstructing trail access" to the Wilderness Areas because of "[t]he magnitude of obstructed trails across [the Wilderness Areas] and the potential resource damage that will occur"); Docket No. 17-1 at 1 (withdrawing chainsaw authorization as a result of "[a]valanches and heavy snowpack").  The Court agrees with defendants that any future chainsaw authorization is likely to be

meaningfully different; thus, it is not reasonable to expect that plaintiffs will be subject to "the same action" again.  *See Wyoming*, 674 F.3d at 1229.

Because defendants have rescinded the chainsaw authorization and the voluntary cessation and capable of review yet evading repetition exceptions to mootness do not apply, the Court concludes that plaintiffs' claims for relief are moot.

### B.   Ripeness

Plaintiffs argue that their claims are ripe for decision even if the chainsaw authorization has been rescinded.  Docket No. 21 at 8-12.  Plaintiffs argue that the Court can order "meaningful relief," including "APA findings of fact and law, issuing declaratory and injunctive relief, and granting . . . a remand to conduct NEPA analysis" on any future decision to approve chainsaw use in the wilderness.  Docket No. 21 at 8-9.  Relatedly, plaintiffs contend that the chainsaw authorization is part of a "proposed federal action" which "remains very much alive."  *Id*. at 9.[9]

"The basic rationale of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects

---

[9] As discussed above, this theory does not appear to be supported by the complaint.  *See generally* Docket No. 1.  The complaint challenges the chainsaw authorization only.  *See id*. at 2 (arguing that the chainsaw authorization "must be set aside and its implementation enjoined").  The only reference to a future or ongoing proposal is in the prayer for relief.  *See id*. at 25 (requesting that the Court enjoin defendants from acting on the chainsaw authorization and "any future motorized use proposal in designated wilderness that does not first comply with NEPA, APA, and the Wilderness Act").

felt in a concrete way by the challenging parties.'" *Coal. for Sustainable Res., Inc. v. U.S. Forest Serv.*, 259 F.3d 1244, 1249 (10th Cir. 2001) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). Before reviewing an agency's decision, courts must assess "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *HRI, Inc. v. Envtl. Prot. Agency*, 198 F.3d 1224, 1235 (10th Cir. 2000). In making this determination, courts consider four factors:

> (1) whether the issues in the case are purely legal; (2) whether the agency action involved is "final agency action" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 704; (3) whether the action has or will have a direct and immediate impact upon the plaintiff and (4) whether the resolution of the issues will promote effective enforcement and administration by the agency.

*Coal. for Sustainable Res.*, 259 F.3d at 1250. "The plaintiff bears the burden of providing evidence to establish that the issues are ripe." *Id*. at 1249.

*Coalition for Sustainable Resources* is instructive. In that case, plaintiffs alleged that agency defendants, including the Forest Service, violated their duties under the Endangered Species Act to carry out certain conservation programs in the management of Medicine Bow National Forest. *Id*. at 1248. The Tenth Circuit concluded that plaintiffs' claims were not ripe, holding that none of the four factors supported jurisdiction. First, noting that the case "may raise numerous questions of fact or mixed questions of law and fact," the court concluded that the issues in the case were not purely legal. *Id*. at 1250. Next, the court determined that the agency action was not "final" within the meaning of the APA. *Id*. at 1251-52. Finally, the court held that there would be "little immediate impact" if the case was not resolved, and that

addressing the merits of the case at the present time would not promote effective administration.  *Id*. at 1252.

As in *Coalition for Sustainable Resources*, none of the factors support a determination that the issues raised by plaintiffs here are ripe for review.  First, the issues in this case are not purely legal, as plaintiffs appear to concede.  *See* Docket No. 21 at 10 (noting that "[t]he existence of a NEPA-triggering proposal is a question of fact" (citing 40 C.F.R. § 1508.23)).  This factor cautions against the Court's exercise of jurisdiction.  *See Sierra Club v. Yeutter*, 911 F.2d 1405, 1417 (10th Cir. 1990) ("Where disputed facts exist and the issue is not purely legal, greater caution is required prior to concluding that an issue is ripe for review.").  Next, defendants' consideration of allowing chainsaw use more broadly in wilderness areas in the future –  what plaintiffs describe as a "proposed federal action," *see* Docket No. 21 at 9 – is not a "final agency action."  "An administrative decision is final when it is definitive rather than tentative, when it has a direct and immediate effect on the day-to-day business of the parties, and when it has the status of law and requires immediate compliance."  *Yeutter*, 911 F.2d at 1417.  Plaintiffs have offered no evidence that the "proposed federal action" is "definitive rather than tentative," "has a direct and immediate effect on the day-to-day business of the parties," or "has the status of law."  *See id*.[10]  At most, plaintiffs' evidence shows that defendants have considered whether to allow chainsaw use, but

---

[10] Instead, plaintiffs suggest that the ongoing development of a proposal to use chainsaws in wilderness areas triggers the requirements of NEPA.  *See* Docket No. 21 at 9-10.  However, plaintiffs do not offer any authority explaining why a claim brought against an agency for a NEPA violation would be ripe before there is a final agency action.

have not taken any definitive action (save for the now-rescinded chainsaw authorization). *See* Docket No. 21 at 2-5 (discussing documents from the administrative record). Thus, plaintiffs have not met their burden to establish that there is a final agency action that is ripe for review. *Cf. Front Range Equine Rescue*, 2017 WL 5885314, at *7 (noting that a concerned party cannot sustain an APA suit by arguing that "an inoperative decision record shows what an agency wants to do and therefore likely will do when the agency issues a new decision record" (emphasis omitted)). Similarly, plaintiffs have put forward no evidence that there would be any "immediate impact" from the Court's jurisdiction over this case. Plaintiffs plead that the injury they will suffer if the use of chainsaws in the Wilderness Areas is permitted is that their members' use and enjoyment of the Wilderness Areas will be "degraded." *See* Docket No. 1 at 5, ¶ 6. At present, however, there is no authorization for the use of chainsaws in the Wilderness Areas; thus, plaintiffs are in no danger of suffering "imminent harm." *See Coal. for Sustainable Res.*, 259 F.3d at 1252; *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1160 (10th Cir. 2013) (holding claim not ripe where "[a]ny harm to [plaintiffs'] enjoyment of the lands at issue rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" (internal quotation omitted)). Finally, the Court is persuaded that resolving the issues presented by plaintiffs at the present time would not promote efficiency because defendants have not chosen any course of action. *See Coal. for Sustainable Res.*, 259 F.3d at 1253 ("The . . . Forest Service, with [its] specialized expertise, should be allowed a first chance to balance the competing interests at stake and choose a course

of action. That decision, once it is final, can be reviewed by the courts more effectively and efficiently.").

Plaintiffs have not met their burden to demonstrate that any issues related to the "proposed federal action" of authorizing future chainsaw use in the Wilderness Areas is ripe for review. Thus, the Court rejects plaintiffs' arguments that there are issues in this case that are ripe for determination independent of the chainsaw authorization.

### C.   Motion for Jurisdictional Discovery

Plaintiffs move for limited jurisdictional discovery. Docket No. 22. As relevant to resolving defendants' motion to dismiss, plaintiffs seek to discover information related to defendants' decision to revoke the chainsaw authorization. *Id*. at 7-11. Plaintiffs argue that the information they seek to discover will demonstrate that defendants sought to manipulate the Court's jurisdiction to dismiss this case.

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (citation omitted). "In determining whether to allow jurisdiction discovery[,] however, the trial court 'is vested with broad discretion.'" *Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1227 (D. Colo. 2009) (quotation omitted). An abuse of discretion occurs upon the denial of jurisdictional discovery "if the denial results in prejudice to a litigant." *Sizova*, 282 F.3d at 1326. "Prejudice is present where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Id.* (quotation and citation omitted). A district court will not abuse its

discretion in denying a request for jurisdictional discovery where there is a "very low probability that the lack of discovery affected the outcome of th[e] case." *Magpul Indus., Corp. v. Blue Force Gear, Inc.*, No. 14-cv-01470-RBJ, 2014 WL 6845851, at *2 (D. Colo. Dec. 4, 2014) (quoting *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004)).

Plaintiffs allege that jurisdictional discovery is necessary in order to demonstrate that defendants' stated reason for rescinding the chainsaw authorization – that changed circumstances on the ground meant that little practical benefit would be gained from the chainsaw authorization – was pretextual and a "transparent attempt to manipulate this Court's jurisdiction." Docket No. 22 at 7. In support, plaintiffs point to evidence in the record that Ferebee was aware of high levels of snowpack well before issuing the May 7 memo, May 31 memo, and June 10 memo. The Court, however, agrees with defendants that the record does not lead to any inference of a discrepancy between defendants' action – issuing and subsequently rescinding the chainsaw authorization – and their stated reasons. Instead, the record shows that the heavy snowpack, which defendants were aware of at the time Ferebee issued the chainsaw authorization, lasted longer than expected. *Compare* Docket No. 11-1 at 2 (justifying the chainsaw authorization because "the extensive snowpack that has built up during the past winter" is likely to shorten the field season), *with* Docket No. 17-1 at 1 (indicating that "[r]eports from trail crews and scouts over the past week" indicates that "[a]valanches have blocked many trails," creating "changed conditions" requiring revocation of the chainsaw authorization). The Court is not persuaded that this record

19

gives rise to any inference that defendants' decision to rescind the chainsaw authorization was motivated by a bad-faith attempt to manipulate the Court's jurisdiction over this case. *Cf. Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2573-74 (2019) (noting that an inquiry into the "mental processes of administrative decisionmakers" may justify extra-record discovery only on "a strong showing of bad faith or improper behavior"). Moreover, the Court is not persuaded that plaintiffs have alleged any facts or evidence that they believe limited discovery would reveal and would make their claims ripe for review. *See* Docket No. 22; *see also First Magnus Fin. Corp. v. Star Equity Funding*, 2007 WL 635312, at *10 (D. Kan. Feb. 27, 2007) (denying jurisdictional discovery where plaintiff "ha[d] not stated any facts that it believe[d] jurisdictional discovery would likely reveal").[11] Because the Court is not persuaded that jurisdictional discovery would reveal any evidence that would make this case not moot, the Court will deny plaintiffs' motion for jurisdictional discovery. *See Bell Helicopter*, 385 F.3d at 1298-99 (holding that the district court did not abuse its discretion in denying jurisdictional discovery where there was a "very low probability that the lack of discovery affected the outcome of the case").[12]

---

[11] Plaintiffs suggest that "jurisdictional discovery is necessary to produce reliable evidence of the actual effect of the" June 10 memo. Docket No. 22 at 8. However, plaintiffs do not appear to contend that the June 10 memo did not rescind the chainsaw authorization, and plaintiffs do not allege any other "actual effect" that the June 10 memo might have had. Thus, the Court is not persuaded that jurisdictional discovery is needed on this point.

[12] Plaintiffs also request limited discovery in order to obtain any documents needed to supplement the certified administrative record. Docket No. 22 at 11-14. Because this case is moot, there is no need to supplement the administrative record.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Federal Defendants' Motion to Dismiss the Complaint and Memorandum in Support Thereof [Docket No. 20] is **GRANTED**. It is further

**ORDERED** that Plaintiffs' Motion for Leave to Conduct Limited Discovery Regarding Administrative Record and Jurisdiction [Docket No. 22] is **DENIED**. It is further

**ORDERED** that plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. It is further

**ORDERED** that this case is closed.

DATED March 18, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge